68980. PREFERRED RISK INSURANCE COMPANY v. BOYKIN.
(329 SE2d 900)

CARLEY, Judge.

Appellee, who is an independent insurance agent, entered into a nonexclusive agency agreement with appellant. Appellant subsequently terminated that agreement. Alleging that appellant had violated the termination provisions of the contract, appellee sued appel-

lant for breach of contract, tortious interference with contract rights, and tortious interference with business relations. Appellant appeals from the judgment entered on a jury verdict in favor of appellee.

1. Appellant enumerates as error the denial of its motions for directed verdict and for judgment n.o.v. At the outset of our consideration of this enumeration, a rather complex procedural analysis is required.

It appears from the record and transcript that no express ruling from the trial court was ever obtained on appellant's motions for directed verdict. "Nevertheless, by allowing the case to go to the jury, accepting its verdict, and entering judgment, the court tacitly denied the motion[s]." *Horton v. Ammons*, 125 Ga. App. 69, 71 (186 SE2d 469) (1971), aff'd *Smith v. Ammons*, 228 Ga. 855 (188 SE2d 866) (1972). In *Horton*, such tacit denial was a sufficient basis upon which to predicate a subsequent motion for judgment n.o.v., the denial of which was enumerated as error. In the instant case, appellant filed a motion which purported to include a motion for judgment n.o.v., and it now enumerates the denial of that motion as error. However, no ruling on that aspect of the motion appears in the record. If a valid motion for judgment n.o.v. remains pending in the trial court, even after that court's denial of a motion for new trial, then the instant appeal to this court must be dismissed as premature. *Pirkle v. Triplett*, 153 Ga. App. 524 (265 SE2d 854) (1980). Thus, we must determine whether there remains pending a *valid* motion for judgment n.o.v.

After suffering an adverse judgment, appellant filed only a motion for new trial within the 30-day period specified in OCGA § 9-11-50 (b). Subsequently, and after the 30-day period had expired, appellant filed another document styled as an "Amended Motion for New Trial or in the Alternative, Motion for Judgment Notwithstanding the Verdict." It is clear that under OCGA § 5-5-40 (b), appellant could amend its motion for new trial "any time on or before the ruling thereon." However, OCGA § 5-6-39 (b) provides that "[n]o extension of time shall be granted for the filing of motions for new trial or for judgment notwithstanding the verdict." Motions for new trial and for judgment n.o.v. are separate and distinct procedural vehicles, even though they may be joined or sought alternatively under OCGA § 9-11-50 (b). *Burnet v. Bazemore*, 122 Ga. App. 73 (176 SE2d 184) (1970). To give validity to an otherwise untimely motion for judgment n.o.v. merely because it is filed under the guise of an amendment to a timely filed independent motion for new trial would contravene the principle embodied in OCGA § 5-6-39 (b). Therefore, we hold that such an amendment filed outside the 30-day period specified in OCGA § 9-11-50 (b) cannot be employed to effect a valid motion for judgment n.o.v. when such latter motion would otherwise be

untimely.

Accordingly, since appellant's motion for judgment n.o.v. was not timely filed, it was void and a nullity, and provided no basis for a ruling on its merits by the trial court. Cf. *Bennett v. Caton*, 154 Ga. App. 515 (268 SE2d 786) (1980); *Venable v. Block*, 141 Ga. App. 523 (233 SE2d 878) (1977). Under this circumstance, unlike the procedural posture which obtained in *Pirkle v. Triplett*, supra, the failure of the trial court to rule on appellant's void motion for judgment n.o.v. does not render the instant appeal to this court premature.

Moreover, the invalidity of the motion for judgment n.o.v. does not affect this court's review of the trial court's tacit denial of appellant's motions for directed verdict. Appellate review of the denial of a motion for directed verdict is appropriate even where no motion for judgment n.o.v. has been filed. *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (249 SE2d 224) (1978).

2. We thus come to a consideration of the merits of appellant's contention that its motions for directed verdict should have been granted. Such motions should be granted only where there is no conflict in the evidence as to any material issue, and the evidence presented, together with all reasonable deductions therefrom, demands a verdict in favor of the movant. OCGA § 9-11-50 (a); *Timber Equipment v. McKinney*, 166 Ga. App. 757 (1) (305 SE2d 468) (1983). In reviewing the trial court's denial of motions for directed verdict, the appellate courts apply the "any evidence" standard. *United Fed. Savings &c. Assn. of Waycross v. Connell*, 166 Ga. App. 329, 330 (1) (304 SE2d 131) (1983).

As noted previously, appellee's claims were based upon the termination provisions of his contract, and the conduct of appellant in relation thereto. The contractual provision in issue expressly provided that in the event of the termination of the agreement, appellant insurance company *"shall give first consideration* to a nomination by the [appellee] . . . of his successor, provided the successor is in all respects acceptable to [appellant]." (Emphasis supplied.) Appellee could then negotiate with his successor to receive compensation for the value of the nomination and the good will of the agency. The contract further provided that if no such acceptable successor was nominated, and if appellant did not purchase appellee's agency at a specified price, then appellant and appellee would each be free to solicit the policyholders' business separately, each for its or his own benefit.

Construed in the light most favorable to appellee, there was evidence that appellant sent appellee a notice of termination which stated that appellant elected to compete independently for the policyholders' business, rather than indicating that it would first afford appellee the opportunity to nominate a successor agent. After receiving the letter, appellee made no attempt to nominate a successor, because

he determined that such an act would be useless. There was further evidence that, prior to sending the notice of termination to appellee, an employee of appellant had informed another person that appellee's agency was to be terminated, and that appellee's block of business would be transferred to such person. Subsequent to the termination of appellee's agency, appellant contacted the policyholders who had heretofore maintained a business relationship with appellee. The policyholders were informed that there had been a change of agent, and a new agent's name and address were supplied to them. Only 41 of approximately 273 policyholders so contacted continued or resumed purchasing their insurance through appellee. Expert testimony assigned a monetary value to the lost business. Thus, there was some evidence to support a finding that appellant damaged appellee by breaching the termination provisions of the agency agreement. The trial court did not err in denying appellant's motion for a directed verdict on appellee's breach of contract claim.

Appellant also complains of the denial of its motion for directed verdict on the claim of tortious interference with business relations. At trial, appellant contended that since appellee could have re-solicited the business of his former customers, and since he did business with companies other than appellant, his business relationships were not disrupted. However, evidence was presented to show that commissions derived from appellant's policies constituted roughly one third of appellee's total revenues, and that because appellant contacted its policyholders and provided them with the name and address of a new agent, appellee suffered a loss of credibility, and most of the policyholders so contacted by appellant ceased doing business with appellee. Thus, there was some evidence from which a jury could find that appellant maliciously and wrongfully, and with the intent to injure, harmed appellee's business. *Bodge v. Salesworld, Inc.*, 154 Ga. App. 65 (267 SE2d 505) (1980). Accordingly, the trial court did not err in denying the motion for directed verdict on this claim. See generally *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245 (166 SE2d 744) (1969).

With regard to the claim of tortious interference with contract rights, appellant urged in the lower court that there was no contractual relationship between appellee insurance agent and his customers who purchased policies with appellant. Accordingly, appellant contended, there were no contract rights with which it could interfere. However, there was testimony that appellee had maintained a continuing relationship with the policyholders from year to year, and that he had done business with some of them for as long as 17 years. These customers depended on appellee as an independent agent to accommodate their insurance needs, and many of them had no knowledge of appellant at the time they sought to obtain insurance through

appellee. Thus, there was some evidence of the existence of an implied agreement to procure insurance coverage between appellee and the policyholders. See generally *Speir Ins. Agency v. Lee,* 158 Ga. App. 512, 513-514 (2) (281 SE2d 279) (1981); *Nat. Property Owners Ins. Co. v. Wells,* 166 Ga. App. 281, 282-283 (2) (304 SE2d 458) (1983); *Northeastern Ins. Agency v. Courson,* 156 Ga. App. 321 (274 SE2d 714) (1980). Appellant's motions for directed verdict were properly denied.

3. Appellant made motions for mistrial on the basis of two remarks made by counsel for appellee during his opening statement to the jury. The denial of these motions is enumerated as error.

The first such remark was: "Although this is a civil case and not a criminal case, I submit to you that, nonetheless, it is a case of robbery." While this characterization of the action may not have been within the scope of permissible argument, the trial court gave appropriate curative instructions to disregard the statement, and appellant has not shown any positive injury arising therefrom. See *American Employers Ins. Co. v. Johns,* 122 Ga. App. 577, 581 (2) (178 SE2d 207) (1970); *Ga. Power Co. v. Redman,* 137 Ga. App. 427, 429 (3) (224 SE2d 477) (1976). "Even where the conduct of counsel exceeds the bounds of propriety, the trial judge is vested with a broad discretion in determining whether to grant a mistrial, and his ruling will not be disturbed unless it appears that his discretion was manifestly abused. [Cits.] Although [counsel's remarks] may indeed have exceeded the bounds of propriety, we do not find them so outrageous or prejudicial as to have required the grant of a mistrial." *Walker v. Bishop,* 169 Ga. App. 236, 241-242 (312 SE2d 349) (1983).

The second challenged remark was that appellee's insurance business is essentially a one-man shop in the community of Pooler, whereas appellant company has its home office in Des Moines, Iowa, and does business in a number of states. Appellant contends that this statement improperly emphasized the financial disparity between the parties.

It is true that argument which contrasts the financial status of one party with that of another is condemned, although the trial court nonetheless has discretion in determining whether a mistrial should be granted. *Continental Cas. Co. v. Wilson-Avery, Inc.,* 115 Ga. App. 793, 796-797 (156 SE2d 152) (1967). However, in the instant case, counsel's remark concerned the scope of each party's business and was a legitimate inference which could be drawn from evidence which was subsequently introduced without objection. The remark itself "did not intelligibly reflect the overall financial status of either of the parties. . . . Under these circumstances the remark was not injurious to [appellant], was not improper, and did not require either cautionary instructions to the jury or a new trial. The peroration in this case

comes within the general rule that remarks of counsel while addressing the jury which do not undertake to introduce any material fact not disclosed by the evidence do not constitute improper argument. [Cits.]" *Continental Cas. Co. v. Wilson-Avery, Inc.*, supra at 797. See also *Travelers Indemnity Co. v. Wilkes County*, 102 Ga. App. 362, 365 (2) (116 SE2d 314) (1960); *McCluskey v. American Oil Co.*, 225 Ga. 63 (165 SE2d 830) (1969), wherein a *direct* reference to the defendant's financial worth was held to be improper argument, but the failure to grant a mistrial on the basis of the remark was not reversible error.

4. Appellant also enumerates as error the denial of its motion for mistrial based upon a general qualifying question propounded to the jurors during voir dire. " 'The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn. . . . A motion for a postponement of the case until new jurors who had not heard the question asked were selected would have been the proper motion here. [Cit.] Since the motion for mistrial was made before the jury was impaneled and sworn, the trial court did not err in overruling it.' [Cit.]" *Mize v. State*, 173 Ga. App. 368 (326 SE2d 785) (1985).

5. One of appellant's employees was called as a witness by appellee. He was asked whether he knew why he had been given the names of persons who had been doing business with appellant through appellee. The witness was permitted to answer over objection.

A witness may not ordinarily testify "as to what the intent, purpose or contemplation of another may have been in a given situation." *Summer v. Allison*, 127 Ga. App. 217 (1) (c) (193 SE2d 177) (1972). Although the question here in issue could have been answered with a simple "yes" or "no," the witness stated his opinion as to appellant's motive, and the testimony was accordingly improper. *Dilliplane v. Henderson*, 141 Ga. App. 684, 685 (2) (234 SE2d 357) (1977). However, the response was merely cumulative of previous testimony of the witness which had been received without objection. Accordingly, the error in admitting the evidence was harmless. *Hyles v. Cockrill*, 169 Ga. App. 132, 135 (5) (312 SE2d 124) (1983); *Harper v. Samples*, 164 Ga. App. 511, 513 (3) (298 SE2d 29) (1983).

6. Appellant enumerates as error the admission over objection of testimony concerning mental anguish suffered by appellee. Appellant contends that such evidence was irrelevant to the issues being tried.

"As a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence. [Cit.] However, when the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury. [Cit.]" *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 252 Ga. 149, 150 (311 SE2d 818) (1984), cit-

ing *Tuggle v. Wilson*, 248 Ga. 335, 337 (282 SE2d 110) (1981). Since appellee in the instant case sought compensatory and exemplary damages arising from alleged intentional torts, evidence as to mental anguish was relevant and admissible. Compare *Shadowood Assoc. v. Kirk*, 170 Ga. App. 209, 212 (4) (316 SE2d 487) (1984), wherein testimony as to mental anguish was admitted solely on the issue of exemplary damages, and the admission of the evidence was erroneous because such damages had been sought to deter the wrongdoer rather than to compensate for wounded feelings.

Appellant further contends that appellee did not seek damages for mental anguish, inasmuch as such a claim was not specifically pled. This matter was not raised in the trial court and will not be considered on appeal. *American Mut. Ins. Co. v. Thompson*, 169 Ga. App. 24 (1) (311 SE2d 846) (1983); *Cox v. City of Lawrenceville*, 168 Ga. App. 119, 120 (308 SE2d 224) (1983). We note, however, that damages for mental anguish, as an element of general compensatory damages, need not be specially pled. Cf. OCGA § 9-11-9 (g); *Karlan v. Enloe*, 129 Ga. App. 1, 4 (3) (198 SE2d 331) (1973).

7. Error is enumerated upon the admission over objection of evidence concerning attorney fees. Appellant contends that since appellee made no claim for an award of attorney fees, such evidence was irrelevant. See *Burger King Corp. v. Garrick*, 149 Ga. App. 186 (253 SE2d 852) (1979).

When appellee sought to introduce the evidence and appellant objected thereto, appellee argued that his claim for attorney fees was included in his general prayer for "such other just and equitable relief as this Court may deem proper and necessary." However, such a prayer in appellee's complaint was not sufficient to state a claim for attorney fees, because OCGA § 13-6-11 expressly permits recovery of such expenses only "where the plaintiff has *specially pleaded* and has made prayer therefor." (Emphasis supplied.)

Appellee did not move to amend his pleadings to add a claim for attorney fees at the time appellant raised its objection. Instead, the trial court in the purported exercise of its discretion permitted a post-judgment amendment of appellee's pleadings to conform to the evidence. Such a post-judgment amendment would clearly have been proper under OCGA § 9-11-15 (b) *if* the issue of attorney fees had been tried "by express or implied consent of the parties." Here, however, there was no express or implied consent, but rather an express objection to the trial of an issue not raised by the pleadings. Under that circumstance, OCGA § 9-11-15 (b) did not operate to give vitality to appellee's post-judgment amendment to his pleadings. Cf. *Borenstein v. Blumenfeld*, 250 Ga. 606, 607 (1) (299 SE2d 727) (1983). The trial court erred in admitting evidence as to attorney fees. See generally *Carroll v. Johnson*, 144 Ga. App. 750, 753 (4) (242 SE2d

296) (1978).

Since there was no viable claim for attorney fees, it follows that the trial court erred in instructing the jury on that issue. *Sanders v. Griffin*, 134 Ga. App. 689 (2) (215 SE2d 720) (1975); *Lawson v. Dixie Feed &c. Co.*, 112 Ga. App. 562, 566 (4) (145 SE2d 820) (1965).

8. Appellant asserts that the trial court erred in instructing the jury with regard to the principles of breach of contract and the damages recoverable therefor, including the value of good will. Error is also enumerated upon the trial court's charge to the effect that a party to a contract is not required to perform an act which has become useless as a result of action taken by the other party to the contract. Although appellant concedes that the challenged charges embody correct principles of law, it contends that the instructions were not warranted under the facts of the case. We find, however, that the evidence discussed in Division 2 adequately supported the charges given. See *Smith v. Lott*, 246 Ga. 366, 367 (271 SE2d 463) (1980); *East Side Auto Parts v. Wilson*, 146 Ga. App. 753 (2) (247 SE2d 571) (1978).

9. The failure of the trial court to give the following requested charge is enumerated as error: "[N]otice of termination is to be liberally construed. The true intent and purpose of the parties in the ordinary rules of trade must be kept in mind." Appellant has cited no authority to indicate that its requested charge is a correct statement of Georgia law, and we have found none. " ' "A request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper." [Cits.]' [Cits.]" *Fowler v. Gorrell*, 148 Ga. App. 573, 576 (251 SE2d 819) (1978). "A requested charge should be given only where it embraces a correct and complete principle of law which has not been included in the general instructions given and where the request is pertinent and adjusted to the facts of the case." *Gates v. Southern R. Co.*, 118 Ga. App. 201, 204 (162 SE2d 893) (1968). Since appellant has not shown that its requested charge is a correct and complete principle of applicable law, or that its request was pertinent and adjusted to the facts of the case, appellant has failed to establish that the trial court committed reversible error in refusing to give the charge.

10. Appellant contends that the jury's award of exemplary damages was not supported by an award of actual damages.

The verdict of the jury was recorded on a two-page form. On one page, the jury made a separate award of damages as to each specific count of the complaint. The awards were: Count 1, $25,000; Count 2, $15,000; and Count 3, $100,000. On the other page of the form, the jury found that "Plaintiff is entitled to nominal or compensatory damages in the sum of $40,000," which was the total of the amounts

awarded on Counts 1 and 2. The second page further provided for an award of "exemplary damages" of $100,000. Although the first page showed an award of $100,000 on Count 3, the only reference to that amount on the second page was the award of "exemplary damages." Construing the verdict form in its entirety, and giving the verdict its "reasonable intendment" as required by OCGA § 9-12-4, it thus appears that the $100,000 that was specifically awarded on Count 3 was intended to be an award consisting entirely of exemplary damages, unaccompanied by an award of nominal or compensatory damages on that count. Since exemplary damages cannot be recovered where there is no entitlement to compensatory damages, the award of exemplary damages must be reversed. *Kelley v. Austell Building Supply*, 164 Ga. App. 322, 323 (1) (297 SE2d 292) (1982); *Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732, 734 (3) (294 SE2d 572) (1982); *Wade v. Culpepper*, 158 Ga. App. 303 (279 SE2d 748) (1981). Compare *Suber v. Fountain*, 151 Ga. App. 283, 290 (259 SE2d 685) (1979), wherein an *ambiguous* verdict was construed in favor of its validity; *West Ga. Pulpwood & Timber Co. v. Stephens*, 128 Ga. App. 864, 869 (3) (198 SE2d 420) (1973), wherein there was no separate itemization of general damages and exemplary damages. This result obtains even though the parties failed to object to the form of the verdict when it was returned, since the award of exemplary damages was improper as a matter of law. See *Anthony v. Anthony*, 143 Ga. App. 691-695 (240 SE2d 167) (1977).

11. Appellant enumerates as error the denial of its motion for new trial. However, this enumeration is not supported by argument or citation of authority sufficient to establish why the ruling of the trial court should be reversed. "The mere restatement of the enumeration of error or restatement of legal contentions does not amount to argument which will supply reasons why the appellate court should subject the contentions to further review. '[T]his is so because except in the most unusual of analytic circumstances a legal contention will not prove itself.' [Cit.]" *White v. Olderman Realty & Dev. Co.*, 166 Ga. App. 179, 181 (303 SE2d 517) (1983). The failure properly to argue an enumeration of error constitutes an abandonment. *Dean v. State*, 168 Ga. App. 172, 173 (308 SE2d 424) (1983). "Accordingly, we deem the [enumeration] of error to be without merit under the vague argument made in stating the contentions of [appellant] without supplying any reason why the trial court should have granted a new trial." *Freeman v. Allstate Business Systems*, 166 Ga. App. 249, 250 (304 SE2d 97) (1983). See also *DeKalb County v. Fulton Nat. Bank of Atlanta*, 156 Ga. App. 253, 254 (5) (274 SE2d 649) (1980).

12. The judgment of the trial court awarding compensatory damages in favor of appellee is affirmed. The awards of exemplary damages and of attorney fees are reversed.

*Judgment affirmed in part and reversed in part. Banke, C. J., McMurray, P. J., Sognier, Pope and Benham, JJ., concur. Birdsong, P. J., concurs in the judgment only. Deen, P. J., and Beasley, J., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I agree with the opinion except as to Division 10, which strikes the jury's award of $100,000 exemplary damages. The court construes the second page of the two-page verdict form in such a way that the award is rendered illegal. It is just as rationally construed so to be valid and thus express the true intention of the jury, which was to award exemplary damages of $100,000 to plaintiff and against defendant. As stated by the majority, the verdict must be given its "reasonable intendment." OCGA § 9-12-4 further requires: "They shall not be avoided except from necessity."

The jury was authorized to find up to $100,000 actual damages for breach of contract, as to count one; $100,000 actual damages and $300,000 exemplary damages for tortious interference with rights of contract, as to count two; and $100,000 actual damages and $300,000 exemplary damages as to tortious interference with business relations, as to count three.

Page one of the verdict form shows the *total* nominal or compensatory damages to be $40,000 and the *total* exemplary damages to be $100,000; it is dated and signed by the foreman. Page two, which shows the breakdown another way, is really superfluous because the first page of the verdict form is complete. Nevertheless, the breakdown is $25,000 for count one, $15,000 for count two, and $100,000 for count 3.

As to count one, it must all be attributable to compensatory damages, as that is all that is allowed by law and it conforms to what was claimed and charged. As to count two, $5,000 can be attributed to compensation and $10,000 to exemplary damages. As to count three, $10,000 can be attributed to compensation and $90,000 to exemplary damages. This too, would conform to the claim, court's charge, and the law. This would conform as well.[1] Thus the sums would be $40,000 compensatory damages and $100,000 exemplary damages, and that is precisely what is shown as the totals on page one. The breakdown in the jury room may have actually been different, but this apportionment demonstrates that the jury's verdict can be construed as valid just as easily as it can be construed as invalid. The law favors the former. As quoted and applied in *West Ga. Pulpwood v. Stephens*, 128 Ga. App. 864, 870 (198 SE2d 420) (1973): " 'The verdict

---

[1] As shown in the majority opinion, there was evidence to support a finding of actual damages as to count three.

may be construed in the light of the pleadings, the issues made by the evidence and the charge. [Cits.] . . . The presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them. [Cit.].' "

Moreover, even if page two were regarded as ambiguous, it may be stricken for that reason without affecting the integrity and wholeness of the verdict as reduced to judgment. The court in *West Ga. Pulpwood,* supra, went on to say: " 'Even if the verdict is ambiguous . . . and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied. [Cit.]' *Haughton v. Judsen,* 116 Ga. App. 308, 310 (157 SE2d 297)." See also *Suber v. Fountain,* 151 Ga. App. 283, 290-291 (259 SE2d 685) (1979).

Again referring to *West Ga. Pulpwood,* supra, if appellant thought the form irregular or ambiguous, it should have said so at the time of its rendition so that it could be corrected to its satisfaction before the jury retired. It is too late now. *Suber v. Fountain,* supra at 291.

I am authorized to state that Presiding Judge Deen joins in this concurrence in part and dissent in part.

DECIDED MARCH 7, 1985 —
REHEARING DENIED MARCH 29, 1985 —

*Fred S. Clark,* for appellant.
*Brent J. Savage, George L. Lewis,* for appellee.